**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KEVIN JOHNSON,** | § | |
| | § | |
| **Plaintiff** | § | **C.A. No. 20-cv-1921** |
| | § | |
| **Vs.** | § | |
| | § | |
| | § | |
| **HARRIS COUNTY,** | § | |
| | § | |
| **Defendant** | § | **(JURY TRIAL DEMANDED)** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COMES NOW Kevin Johnson ("Plaintiff" or "Mr. Johnson") filing this his Original Complaint against Harris County. ("Defendant" or "Harris County"), and in support of his causes of action would respectfully show the Court as follows:

## I.  JURISDICTION, PARTIES AND VENUE

1.      This Court has jurisdiction over the causes of action alleged by Plaintiff in this Original Complaint pursuant to Title VII of the Civil Rights Act of 1964 as amended ("Title VII") and 42 U.S C §1981 ("Section 1981").

2.      Kevin Johnson ("Plaintiff" or "Mr. Johnson"), whose gender is male, is protected by Title VII and Section 1981, and at all relevant times was an employee within the meaning of the Act.

3.      Defendant, Harris County operates in Texas and was at all times, relevant to the facts and claims in this Complaint, Mr. Johnson's employer within the meaning of Title VII and Section 1981.

4.    Plaintiff will serve Defendant Harris County with his Original Complaint by and through Harris County Judge Lina Hidalgo at 1001 Preston, Houston, Harris County, Texas.

**Vicarious Liability – Respondeat Superior**

5.    Whenever in this Complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's supervisors, managers, agents, servants, employees, or representatives.

## II.    EXHAUSTION OF ADMINSTRATITIVE REMEDIES

6.    Johnson filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about May 4, 2018 wherein he averred that Defendant engaged in racial discrimination against him. The EEOC assigned Mr. Johnson's Charge the No. 460-2018-03575.

7.    After investigation of Mr. Johnson's charge, the EEOC issued him a Right-to-Sue letter on or about March 5, 2020. Mr. Johnson timely filed suit in federal court within 90 days of his receipt of his Right-to-Sue letter.

## III.    FACTUAL BACKGROUND

8.    Defendant hired Mr. Johnson as an Inspector in February 2012. At that time, Defendant paid Mr. Johnson approximately $17/hour. In 2015, the grant under which Mr. Johnson had been hired ended, and Defendant transferred Mr. Johnson to its engineering department to work as a development inspector.

9.    When Defendant transferred Mr. Johnson into its engineering department, Mr. Johnson had at least fifteen years of experience working as an Inspector for FEMA and had been

appointed to FEMA's "Readi Team," which consists of a group of inspectors that have performed their duties above the average inspector and are considered first for employment should a natural disaster occur. Defendant initially set Mr. Johnson's pay rate as a development inspector at approximately $18.00/hr. His supervisor at that time (2015) was Mr. Hunter, an African-American.

10.    Mr. Johnson received a raise while working under Mr. Hunter.  In 2017, Mr. Hunter retired from working for Defendant and Armando Sanchez (Hispanic) became Mr. Johnson's new supervisor.

11.    After working with Sanchez for a short time, Mr. Johnson noticed a stark difference in treatment between Sanchez's treatment of Defendant's black inspectors like himself and Defendant's Hispanic and white employees. To begin, in 2017 Sanchez significantly increased the pay of J. Vasquez and A. Rodriguez, two employees with less experience and education than Mr. Johnson. Mr. Johnson did not enjoy the same or similar increase in pay.

12.    Further, since 2017, Mr. Sanchez has rarely allowed black employees the opportunity to attend court sessions which allows for valuable experience and is considered favorable experience during promotion considerations. Instead, Mr. Sanchez has routinely encouraged and allowed Hispanic and white employees only to attend court sessions.

13.    Mr. Sanchez has also excluded black employees from development meetings regarding and between the inspectors in his department. Only Hispanic and white employees are routinely invited. Similarly, Mr. Sanchez rarely allows senior, black inspectors like Mr. Johnson the same training opportunities that he allows Hispanic and White inspectors to enjoy. These exclusions are to the black inspector's financial detriment because black inspectors do not enjoy the same leadership and training opportunities and are thus unable to build their resume(s) like their Hispanic and White counterparts.

14.     Additionally, during Mr. Sanchez's tenure, he has selected a Hispanic employee on more than one occasion, who holds the same position as Mr. Johnson, to participate on Defendant's interview board. The selected inspector had less experience than Mr. Johnson but Mr. Johnson was not offered the opportunity offered and given to the Hispanic employee. Experiences like these are invaluable as an employee seeks promotions and raises within Harris County. Black employees, however, are often excluded from these valuable type of opportunities.

15.     What is worse is that under Mr. Sanchez's reign, Black employees are disciplined or fired for minor infractions or for policy violations for which they have not received training while Hispanic and white employees do not face comparable discipline.

16.     For example, in about April 2018, black employee Mark Johnson was fired for missing an inspection site and missing a meeting. Upon information and belief, Hispanic employees have engaged in the same or similar behavior without consequence. Similarly, black employee L. Price was fired about June 2019 for not being able to locate an inspection site(s). Upon information and belief, Hispanic and white employees have engaged in the same or similar behavior without consequence.

17.     Too, Black employees are given demeaning work such as cleaning up after Hispanic or white employees while Hispanic and white employees are not required or asked to perform demeaning work. For example, in September 2017, Mr. Sanchez instructed Mr. Johnson to clean a truck so that Keith T. (white inspector) could use the truck. Mr. Sanchez has not required white and Hispanic employees to engage in such demeaning tasks.

18.     Black employees like Mr. Johnson have routinely requested opportunities to train, learn and/or lead but Mr. Sanchez has routinely denied Mr. Johnson's requests by excluding him from learning opportunities, certification opportunities, court sessions, board sessions and more.

19.     Black employees are also paid grossly less than Hispanic and White employees that have similar or less experience and education.

20.     Because of these disparities in treatment, Mr. Johnson filed a charge of discrimination with the EEOC in May 2018.

21.     Following Mr. Johnson's charge of discrimination to the EEOC, Mr. Johnson has suffered retaliation.  Specifically, Mr. Sanchez has since highly scrutinized Mr. Johnson's job performance, he has excluded Mr. Johnson from promotion opportunities, and he has begun to issue Mr. Johnson disciplinary actions which Mr. Johnson never received before.

22.     For example, in May 2019, while Mr. Sanchez provided all inspectors with at least 24-hour to prepare for an interview for a senior inspector position. Mr. Sanchez notified Mr. Johnson only 2-hours in advance of his interview. This intentional short-notice sabotaged Mr. Johnson, who had donated blood on the same morning that Sanchez notified him of his interview and was therefore tired. Moreover, the email notifying all inspectors of the interview process specifically stated that interviewees should dress professionally and be prepared for the interview. Sanchez's intentional short-notice to Mr. Johnson served to deny Mr. Johnson of his ability to properly prepare for his interview and ultimately cost Mr. Johnson a promotion.

23.     For another example, in January 2020, Mr. Sanchez disciplined and wrote Mr. Johnson up for an alleged unclean car. Yet Defendant had never notified Mr. Johnson of its policy regarding cleaning his car before the discipline and had not trained Mr. Johnson on its preferred method of cleaning a car. Moreover, other inspectors who are Hispanic and white have vehicles that are routinely unkempt and have never been disciplined.

24.     When Mr. Johnson complained that the January 2020 write-up was not warranted and was unfair, Mr. Sanchez increased Mr. Johnson's write-up to a 6-month probation.

25.     In addition to the unwarranted and retaliatory disciple and exclusion from promotion opportunities, Mr. Johnson has faced retaliatory incidents such as having a tape-recorder hidden in the truck he drives and finding a microwave placed on the center of his desk before he arrives to work.  These type activities are intimidating, harassing and retaliatory.

26.     Supervisor Sanchez has consistently treated Mr. Johnson and other black inspectors differently than non-blacks.

27.     Hispanic and white inspectors who hold same position as black inspectors but possess less job experience and/or education get higher pay rates and titles than Defendant's black inspectors.   For instance, In May 2018, Mr. Johnson's (African-American) pay rate was approximately $19.00/hour compared to J. Velasquez (Hispanic) who was paid $25.00/hour. Also, in 2019, Mr. Johnson's pay rate was approximately $21.00/hr. compared to J. Velasquez's pay of at least $26.00/hr.

28.     As set forth herein, Defendant makes harsh and unfair employment decisions based on race which has detrimentally affected Mr. Johnson and other black employees in their employment and pay with Harris County, and has retaliated against Mr. Johnson for his complaints of race discrimination.  By this lawsuit, Mr. Johnson seeks redress.

## IV.     CAUSES OF ACTION

### A. RACE DISCRIMINATION TITLE VII AND SECTION 1981

29.     Plaintiff repeats and re-alleges by reference each allegation contained in the paragraphs above and incorporates them here as though fully set forth.

30.     Defendant violated Plaintiff's civil rights in violation of Title VII and Section 1981 by subjecting Plaintiff to disparate treatment based on his race, excluding him from promotion,

training, and learning opportunities and discriminating against Plaintiff with respect to his pay because of his race.

31.     These violations consisted of discrimination of a continuous nature and led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment with Defendant.

32.     Such employment practices were not job-related and were not consistent with business necessity.

33.     Such employment practices were not based on (1) a seniority system; (2) merit system; (3) system measuring earnings by quantity or quality of production; or (4) a differential based on any other factor other than race.

34.     The above-described acts by Defendant caused Plaintiff substantial injury and damage.  As a direct and proximate result of Defendant's race discrimination against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and liquidated damages in amounts that will be proven at trial.

35.     The above-described acts on Defendant's part were intentional, committed with malice and undertaken in violation of Title VII and Section 1981 proximately causing Plaintiff substantial injuries and damages.

36.     Defendant, through its agents, supervisors, or employees further violated Plaintiff's civil rights in violation of Title VII and 42 U.S.C. §1981 by intentionally interfering with Plaintiff's employment because of his race (African-American). Defendant subjected Plaintiff to disparate treatment in decisions regarding promotions, discipline and the payment of wages based

on race. Defendant denied Plaintiff benefits of employment which were freely offered to its Hispanic employees.

37.      Defendant acted with malice or reckless indifference to Plaintiff's state and federally protected rights to be free from discrimination in him employment based on his race. Defendant's acts were intentional and consisted of discrimination of a continuous nature. Further, Defendant's discrimination against Plaintiff led to the diminution and impairment in whole or part, of his wages, benefits, promotions, privileges, and terms and conditions of employment. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

38.      As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

39.      The above-described acts by Defendant against Plaintiff are clear and direct violations of Title VII and Section 1981.

**B.   RETALIATION PURSUANT TO TITLE VII AND SECTION 1981**

40.      Plaintiff repeats and re-alleges by reference each allegation contained in the paragraphs above and incorporates them here as though fully set forth.

41.      After complaining to management and to the EEOC of maltreatment, Plaintiff was subsequently and repeatedly harassed, harangued, ignored, denied pay increases and promotions and disciplined.

42.      As herein alleged, Defendant illegally retaliated against Plaintiff because he complained of maltreatment and discrimination. Defendant had no legitimate business reasons for any of such acts.  Each act of retaliation is in violation of 42 U.S.C. §1981 and Title VII's anti-

retaliation provisions.

43.     As a direct and proximate result of Defendant's willful, knowing and intentional discrimination and retaliation against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

44.     The above-described acts on Defendant's part were undertaken in violation of 42 U.S.C. §1981 and Title VII and proximately caused Plaintiff substantial injuries and damages.

### V.     DAMAGES

45.     Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affected Plaintiff in his occupation.  Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer financial loss, humiliation, mental anxiety and stress, and other damages.  Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

46.     Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent his in these causes of action, and Plaintiff has agreed to pay his attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

47.     Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living.  Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

48.     Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant.  Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VI.     JURY DEMAND

49.     Plaintiff requests that this action be heard before a jury.

## VII.     PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a.      Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of race and/or protected complaints.

b.      All damages to which Plaintiff may be entitled pursuant to this Complaint, or any further amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c.      Compensatory damages for pain and mental suffering in the past and future;

d.      Reasonable attorney's fees, with conditional awards in the event of appeal;

e.      Pre-judgment interest at the highest rate permitted by law;

f.      Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g.      Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

h.      Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any further amendment hereto.

Respectfully submitted,

The Murphy Law Practice, PLLC

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
State Bar No. 24013218
Federal Bar No. 34512
3355 W. Alabama, Ste. 670
Houston, Texas 77098
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email: marjorie@themurphylawpractice.com
**ATTORNEY-IN-CHARGE FOR**
**PLAINTIFF KEVIN JOHNSON**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2020, this instrument was filed pursuant to the electronic filing guidelines set forth by the United States District Court for the Southern District of Texas, Houston Division.

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy